## WHITESIDE *v.* ELLIOTT.*

(Division B. Feb. 22, 1926.)

[107 So. 195. No. 25439.]

1. JOINT-STOCK COMPANIES AND BUSINESS TRUSTS. *Subscriber to stock of nonresident joint-stock company, receiving dividends or other benefits, held liable on notes for stock.*

   Where a person subscribed to stock in a joint-stock company, giving a note for part of the purchase money, and pledging the stock as collateral, and where the subscriber receives dividends or other benefits on account of the contract, and the joint-stock company afterwards becomes bankrupt, such person is liable upon the notes for subscription to such stock, where the joint-stock company is a nonresident of the state.

2. JOINT-STOCK COMPANIES AND BUSINESS TRUSTS. *Letter of joint-stock company, stating that, if subscription note was not paid, stock would be canceled and resold, held not to avoid liability on note, in absence of resale of stock.*

   In such case the fact that the joint-stock company, after maturity of the note, writes a letter stating that, if the note is not paid within a given time, the stock will be canceled and resold to other parties, will not avoid the liability on the notes, in the absence of proof that the stock was canceled or resold.

3. EVIDENCE. *Letters from third party or company stating that it had taken over or merged with joint-stock company held hearsay and not admissible in action on stock subscription.*

   Letters from a third party or company in such case, stating that it had taken over or merged with the joint-stock company, whose stock was subscribed for, and would issue its own stock in lieu thereof, is not admissible in evidence to show such merger, being mere hearsay evidence. This is especially true where the bankruptcy court takes charge of the affairs of the first joint-stock company and undertakes to liquidate its business.

---

*Corpus Juris Cyc. References: Evidence, 22 C. J., p. 209, n. 77. Joint Stock Companies, 33 C. J., p. 855, n. 42 New.

APPEAL from circuit court of Chickasaw county.

HON. THOS. E. PEGRAM, Judge.

Action by Dan F. Elliott, as trustee in bankruptcy of the Seven States Oil Company, against J. C. Whiteside. Judgment for plaintiff, and defendant appeals. Affirmed.

*Geo. Bean* and *L. P. Haley,* for appellant.

Joint stock associations and common-law trusts of a statutory character are not known to the laws of Mississippi. Referring to joint stock companies, see 23 Cyc., p. 469; Morrison-DeSoto on Oil and Gas Rights, p. 913. A joint stock company and a common-law trust are *quasi*-corporations. They have a legal right to a merger and in this case the appellee has proved the merger and the appellant has verified it.

There can be no question but that the Seven States Oil Co. passed the Whiteside stock to the Petroleum Trust, after September 28, 1920, the time when Whiteside was notified that he would no longer own the stock.

A *merger* is an act which consists in the uniting of two or more corporations by transfer of the property of all of them to one of them, which continues in existence, the others being *swallowed up* or *merged* therein. 27 Cyc. 482; *Vicksburg Tel. Co.* v. *Citizens Tel. Co.,* 79 Miss. 341. It may be noted that the merger of the two oil concerns here is in no way hindered by statute as they are not regulated by statute.

Our contention is that the so-called letters were simply *legal notices* from the Seven States Oil Co. to J. C. Whiteside that on or before September 28, 1920, his stock in said concern would be sold and the proceeds applied to the payment of his notes for part of the purchase price of the stock. *Notice,* in its legal sense, may be defined as information concerning a fact actually communicated to a party by an authorized person, etc. 29 Cyc., p. 113. This was actual *notice.* Either direct or circumstantial evidence is admissible to establish actual notice. 29 Cyc., p. 1125, note 24.

*The question of actual notice is one of fact for the jury.* 29 Cyc. 1126 and note 25. Reference is made to the foregoing to emphasize appellant's contention that this case should have been submitted to the jury.

*Fraud,* being an issue here and in the court below, and being a mixed question of law and fact, there are sufficient facts adduced here to entitle the question, under proper instructions from the court, to be submitted to the jury. The question of *merger* we believe to be proved, but if there is any doubt about it, then that ought to be submitted to a jury.

*Frank C. Lee, L. R. Featherstone,* and *Paine & Paine,* for appellee.

The Seven States Oil Company was organized in Wichita Falls, Texas. It was a joint stock association, the appellant Whiteside being one of the joint stockholders. About two and one-half years after Whiteside became a member of this company, it attempted to consolidate with the Petroleum Trust which changed its name to the Royal Refining Co., but nothing ever materialized, except that a few of the stockholders traded stock among themselves.

The proof in the case shows that Whiteside had not paid for his stock and that, despite that fact, he went along over the months and years enjoying his standing as a shareholder without making a complaint to any one until the trustee in bankruptcy called on him to pay up his unpaid subscription evidenced by the notes in this suit. It was not until that late hour, after the rights of a quarter of a million dollars of creditors had intervened and become fixed against the Seven States Oil Co. and its assets, did Whiteside ever raise his hand to discover fraud, or payment, or failure of consideration, or any other defense, or raise his voice to proclaim any complaint to the world. The trial court very promptly ruled that Whiteside was estopped, without complaint, and gave a peremptory instruction in favor of the appellee.

When a person subscribes for shares in a joint stock association, he assumes, by operation of law, a different obligation than in becoming a member of any other kind of business organization. His obligation is tri-lateral, as will be shown by the decisions hereinafter quoted. When he engages to buy the stock in a joint stock company, he contracts, first, that he will abide by its rules and regulations and function as a member; second, he agrees with the fellow shareholders that he will pay for his stock, bear the burdens and share the profits proportionately with them; and, third, he contracts with the public that if they become the creditor of his company, he will be jointly and severally bound for its debts. See Rowley, Parternerships and Joint Stock Ass'n., sec. 1055, p. 1444; *Haynes* v. *Kent*, 8 La. Ann. 132; *Altoona Sanitary Milk Co.* v. *Armstrong*, 39 Pa. Supr. Ct. 350; *Glover* v. *Tuck*, 2 Wend. (N. Y.) 153; *Braddock Electric Ry. Co.* v. *Bily*, 11 Pa. Supr. Ct. 144; *Graff* v. *Railroad*, 31 Pa. 489; *Philadelphia & Del. County R. R.* v. *Conway*, 177 Pa. 364; *Jeanette Bottle Works* v. *Schall*, 15 Pa. Supr. Ct. 96; *Sheba* v. *Lancaster County Park Ass'n.*, 60 Pa. 429.

Even though Whiteside should have shown proof that there might have been some fraud, some failure of consideration as between himself and the officers managing the association or even between himself and the association, he could not avail himself of these defenses after the rights of the third parties, who in this case are the creditors, the public, had intervened. We understand the law to be that if he had found any fraud, or if he had rescinded during the life of the Seven States Oil Co., he might have been able to protect himself with a proper suit in the courts, but he sat idly by and it is too late for him to complain now. The leading case in the United States on this subject is *Wilson* v. *Hundley*, 96 Va. 96, 70 Am. St. Rep. 837. This case holds that the general rule of law which gives relief to a person induced by fraudulent representation to subscribe for stock in the ordinary company, such as corporations, etc., "*does not*

*apply to joint stock associations because of the tri-lateral legal effect created by the subscriber when he subscribes."* This is likewise the English rule, as will be seen in Addleton v. Linoleum Co., L. R. A. 37, Ch. Div. 191.

Since Mr. Whiteside did not avail himself of the opportunity to rescind his contract during the existence of the Seven States Oil Co., and since he is now debarred from a rescission of the contract by virtue of the bankruptcy of the Seven States Oil Co., his only remedy is against W. F. Skinner, the salesman or agent who sold him the stock. *Wilson v. Hundley, supra,* Benjamin on Sales (6 Am. Ed.), secs. 705-709; Taylor on Corporations, sec. 523; Cook on Stock and Stockholders, sec. 159 and note; *Wilson v. Hundley,* 70 Am. St. Rep. pars. 2, 844.

Appellant raises some question as to what the officers of the bankrupt company had told him. Suppose Wrather, the managing genius of the Seven States Oil Co., had told Whiteside he would relieve him from the payment of his stock. Such an agreement would have been of no force and effect whatever, so far as the fellow shareholders or creditors are concerned, and they should have forced Whiteside's hand just the same. No board of directors, nor trustees, can vitiate the subscriptions to joint stock association stock. *Brooks v. Smith,* 16 Wall 390, 21 L. Ed. 361; *Sawyer v. Hoag,* 17 Wall 610, 21 L. Ed. 731; *Upton v. Triplecock,* 91 U. S. 45-48, 23 L. Ed. 203; *Sanger v. Upton,* 91 U. S. 65-71, 23 L. Ed. 384; *Hawley v. Upton,* 102 U. S. 314-16, 26 L. Ed. 179; *County Morgan v. Allen,* 103 U. S. 389-508, 26 L. Ed. 498; *Morgan v. Struthers,* 131 U. S. 246-254, 96 L. Ed. 132; *Clark v. Bever,* 139 U. S. 196-212, 36 L. Ed. 88; *Potts v. Wallace,* 146 U. S. 698-704, 37 L. Ed. 1135; *Harhold v. Upton,* 154 U. S. 624, 23 L. Ed. 892; *Curren v. Arkansas,* 15 Howard 304, 14 L. Ed. 705; Thompson on Liability of Stockholders, sec. 10; Cook on Stock and Stockholders 75; Morawetz on Corporations, sec. 309; *Cartwright v. Dickinson,* 86 Tenn. 476; *Chase v. Railroad,* 5 Lee 415;

Morawetz on Corporations, sec. 309, and cases therein cited.

Having admittedly passed as a stockholder and received and enjoyed dividends, knowing at the time that his stock was unpaid for, he is now estopped to complain of any irregularity that might have existed. *Scoville* v. *Thayer,* 105 U. S. 159; *Naragansett Bank* v. *Atlantic Silk Co.,* 3 Met. 287; *Dooley* v. *Cheschire,* 15 Gray 494; *Kansas City Hotel Co.* v. *Harris,* 51 Mo. 454; Ames on Corporations, 518-636; *Brower* v. *Appleby,* 1 Sandifer 168; *Upton* v. *Triplecock,* 91 U. S. 80.

If Whiteside had wished at any time to be relieved, it was his duty to have acted promptly and definitely. *Tiernay* v. *Parker,* 59 N. J. Eq. 117, 44 Atl. 151; *Scott* v. *Abbott,* 160 Fed. 573; *Saffold* v. *Barnes,* 39 Miss. 399; *Thigpen* v. *Miss. Cent. R. R. Co.,* 32 Miss. 347; *Ellison* v. *M. & O. R. R. Co.,* 36 Miss. 572.

There was nothing left for the court to do but take this case from the jury, as there were no issues of facts for the jury to pass on, as Whiteside himself testified his last chance away and is estopped to put up any defense whatever.

ETHRIDGE, J., delivered the opinion of the court.

Appellee was plaintiff below, and sued the appellant on subscriptions to stock in an oil company. Appellant subscribed to certain shares of stock in the Seven States Oil Company, and paid a portion of the purchase money and gave notes for the balance. The contract guaranteed on the part of the Seven States Oil Company a dividend of one per cent. per month. During the life of the Seven States Oil Company certain dividends were made and checks issued to the appellant, which he received and cashed as dividends, varying in amount. Afterward the Seven States Oil Company became financially embarrassed and was placed in bankruptcy. The referee in bankruptcy gave the trustee power to sue a large number

of persons on the subscriptions to the stock; among them being the appellant.

Prior to the bankruptcy, the Seven States Oil Company had taken the stock issued to the appellant as collateral security for his notes and were in possession of the stock, and, the notes becoming past due, gave written notice to the appellant that, unless he paid the notes, the stock would be canceled and later sold to pay the notes, but there is no showing that the stock ever was sold or canceled or what became of it.

The appellant sought to prove, by letters from another oil company to some of the subscribers to the stock of the Seven States Oil Company that it had merged with the Seven States Oil Company and had taken over its stock and would issue its own stock in payment for the subscription to the stock in the Seven States Oil Company. One witness introduced testified that she had exchanged her stock in the Seven States Oil Company for stock in the other oil company. This evidence was objected to and excluded by the trial court.

We are satisfied with the rulings of the court below, and find no error sufficient to reverse the judgment. It was not permissible to introduce the letters of the other company, nor the fact that the stock of the Seven States Oil Company, held by other persons, was traded for stock of the other oil company. There was nothing shown as a statement or representation by the Seven States Oil Company that there was any such merger, and the letters offered in evidence would be mere hearsay on that proposition. The fact that the federal court adjudged the Seven States Oil Company, a bankrupt and was administering its affairs in bankruptcy will be held, in the absence of allegation and proof, that it continued to be a corporation. In other words, the action of the bankruptcy court is presumed to be correct.

The judgment will therefore be affirmed.

*Affirmed.*